# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

Civil Action No.: 2:19-CV-37

| | |
|---|---|
| BILLY JOE BREWSTER, JR., LARRY E. NORMAN, and THOMAS L. HILL, on behalf of themselves and others similarly situated, Plaintiffs, v. PHILLIP E. BERGER, in his official capacity as Speaker Pro Tempore of the North Carolina Senate; TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, DAMON CIRCOSTA. STELLA ANDERSON, JEFF CARMON III, DAVID C. BLACK , KEN RAYMOND AND KAREN BRINSON BELL, in their official capacities as officers or members of the North Carolina State Board of Elections, Defendants. | AFFIDAVIT OF R.E. CARTER WRENN |

AFFIDAVIT OF R.E. CARTER WRENN

COMES NOW THE UNDERSIGNED, R.E. CARTER WRENN, AND BEING DULY SWORN SAYS THE FOLLOWING:

1. My name is R. E. Carter Wrenn and I am over 18 years of age and am a citizen and resident of North Carolina and I am sui juris in all respects.

2. I am employed as a political consultant and have been involved in political races since 1974. These races include Congressional races, Presidential races, U.S. Senate races, N.C. Senate races, Gubernatorial races, N.C. State House races, judicial races, Sheriff's races, and municipal races.

3. I was called, by the former Raleigh News and Observer political writer Rob Christensen, one of the four most influential nonelected political figures in North Carolina politics.

4. As a political consultant I make T.V., radio, and internet ads and political mailers, place TV and radio time buys for political ads, draft and analyze public opinion polls, advise candidates on campaigns and strategies and help conduct research on candidates and issues.

5. I have worked on Congressional races for both incumbents and challengers and since 2012 I have been the political consultant for Congressman George Holding. I have consulted for him in all of his primary and general elections for Congress in both the 13th and 2nd North Carolina Congressional District.

6. George Holding's races are a good example of the problems with last minute judicial tampering with Congressional Districts.

   A. In 2011, George Holding decided he wanted to consider running for the newly created 13th Congressional District in the 2012 election. We began researching the demographics of the 13th District and hired a company to match the Board of Elections voters list with other relevant information about the voters. We researched different types of media we could need to use to get Holding's message to the voters. We conducted polls (based on the voter rolls) to help us understand whether voters in the 13th District agreed or disagreed with

George Holding's political stands to see what issues were the most important to the voters. We also compiled lists of political donors to help us raise money in the district.

B. In the 2012 primary Holding ran for the Republican nomination. It was a competitive primary and Holding won. He also won in the 2012 general election and was elected as the 13th District's Congressman.

C. In January, 2013 Holding was sworn in as the 13th District Congressman and for three years was the district's Congressman. During that time he learned more about the district and, importantly, voters in the district learned more about him, about his political beliefs and his voting record. In 2015, preparing for the 2016 election, Holding had taken polls of his district, voter lists were compiled and updated, internet media ads were run to voters in his district and fundraising in North Carolina was focused primarily on residents in the district.

D. On or about February 5th, 2016 the federal courts declared the NC 1st and 12th Congressional Districts to be illegally gerrymandered and this required the districts, including the 13th District, to be reconfigured. This was done after the primaries were set and the filing had closed for the 2016 Congressional elections and candidates had prepared for the primaries and the voters thought they knew who they would be voting on.

E. As a result of this last minute intervention by the federal courts the N.C. Legislature held a special redistricting session and on February 19th, 2016 the new Congressional districts were enacted and the Congressional primary elections were set for June 7th, 2016.

F. The new maps caused Congressman Holding's original district to move to the Winston Salem, N.C. region and caused Congressman Holding to run in the newly created 2nd Congressional District. Approximately 60% of the voters in the new 2nd District were people Holding had represented in his old district and 40% were 'new' voters he had not represented.

G. The last minute change in districts was a tremendously disruptive: It took time for the N.C. Board of Elections to promulgate the new voting lists in the new Congressional districts and make them public and then it took longer for candidates to be able to build their own usable databases of voters in the new districts.

H. In Congressman Holding's case he had to prepare to run in a new district and had only about 14 weeks to do it.

I. You can't say, when your district changes by 40%, that you only change your strategy by 40%. Instead, you have to start from scratch and build a new strategy. In Holding's case this meant the work done in 2015 preparing for the 2016 election was essentially wasted. This also means any challenger's preparation was essentially wasted.

7. In my professional opinion, Congressional races are substantially different from state wide races and single county races in several ways but particularly because the boundaries of a Congressional District ultimately determine the success or failure of a candidate at the polls. As shown in Paragraph 6, the boundaries of a Congressional race determine the demographic makeup of the voters; the relevant media outlets are also determined by the Congressional boundary lines; political fund raising, while not completely controlled by district lines, is substantially effected by Congressional boundary lines because it is easier to raise money from people in the district – further some districts have more donors in them than other districts ;

8. All of the foregoing boundary issues described in Paragraph 7 are extremely important to determining the needs, obstacles, advantages and disadvantages of a candidate running in a particular Congressional district.

9. Time is also a unique factor in a political race. Less time means a candidate will be able to communicate fewer messages to voters about issues. Less time also limits a candidate's ability to raise funds which, again, limits his ability to communicate to voters.

10. The amount of time a candidate has in a campaign is crucial to determining how much money a candidate can raise; how many times a candidate can communicate his messages about issues to voters through ads and other media; how long a candidate has to research his opponents political beliefs and provide information to voters so they may compare and contrast his opponents' beliefs with his own; how much time there is to prepare and conduct meaningful polls and to analyze the polls to determine how much voters have learned about his and his opponents' stands; how much time there is to determine the most effective mediums to place political ads;

11. Incumbents generally start out better known and better funded than challengers. Therefore, in a shortened campaign cycle, a challenger has less time to raise money, to communicate with and become known to voters, and this leaves challengers greatly disadvantaged by a shortened campaign cycle especially when districts are changed at the last minute.

12. In this election cycle the filing period is set for December 2 through December 20, 2019 and the primary is set for March 3rd, 2020. If the Congressional districts change at this late date a candidate would have to buy a different data base of the new district's voters and of the new district's donors. When a district is changed the new voting data has to go to the State Board of Elections which then has to use the data to update the voter files. A candidate then has to wait for the Board of Elections data to be processed and made available to the public, and for this information to be effective and useful it then has to be bought by a data company and that

company then has to compile useful voter lists based on the new districts. This takes substantial time - time that cannot be gotten back. A new district also requires a candidate to pay for new polling, do new media analysis, likely do new political messaging and make new fundraising plans.

13. As discussed earlier, it is my professional opinion changes in district also adversely affect voters. This is because, just as candidates and Members of Congress get to know their districts over time, voters also get to know their Congressmen - warts and all. Continuously moving and redrawing districts makes it more difficult for voters to learn both positive and negative facts about their representative's stands on issues, voting record, and personal traits (like honesty and candor).

14. For the foregoing reasons it is my professional opinion that changing the N.C. Congressional Districts for the 2020 elections at this late date will substantially damage and prejudice and do irreparable to all candidates running for Congressional office and be particularly and substantially prejudicial and do irreparable harm to Challengers in Congressional races.

AFFIANT FURTHER SAYS NOT

NORTH CAROLINA

WAKE COUNTY

R.E. Carter Wrenn, being first duly sworn, deposes and says:

That he is the Affiant in the foregoing Affidavit; that he has read same and that it is true of his knowledge, except as to those matters and things therein stated upon information and belief, and as to such he verily believes it to be true.

_____*Carter Wrenn*_____
R.E. Carter Wrenn

Sworn to and subscribed before me
this the ~~24~~th day of ~~October~~ November, 2019

_____*[signature]*_____
Notary Public

My commission expires: 10/5/2020

(SEAL)

*[Notary seal: CONRAD BOYD STURGES III, NOTARY PUBLIC, FRANKLIN CO., NC]*