IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 2:19-cv-37

| | |
|---|---|
| BILLY JOE BREWSTER, JR., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PHILLIP E. BERGER, etc., et al., )<br>)<br>Defendants. )<br>) | **RESPONSE TO PLAINTIFFS' MOTION<br>FOR PRELIMINARY INJUNCTION** |

For the reasons stated below, Legislative Defendants Representative David R. Lewis, Senator Ralph Hise, Senator Warren Daniel, Senator Paul Newton, Speaker Timothy K. Moore, and President Pro Tempore of the North Carolina Senate Philip E. Berger ("Legislative Defendants"), believe that this case is moot because the General Assembly has fully replaced the 2016 North Carolina Congressional Plan challenged by the plaintiffs in the state court case of *Harper v. Lewis*, Case No. 19CVS12667 (Wake County Superior Court). *See* House Bill 1029 ("H.B. 1029") (November 15, 2019), codified as N.C. Sess. Law 2019-249 ("2019 Congressional Plan"). Significantly, however, the *Harper* plaintiffs are continuing to challenge in state court both the now moot 2016 Congressional Plan and the newly enacted 2019 Congressional Plan. If the state court in *Harper* concludes that the matters alleged by the *Harper* plaintiffs are not moot, and either changes the 2019 Congressional Plan or allows a challenge to that plan to proceed, then the issues raised by the *Brewster* plaintiffs in the instant case are not moot and plaintiffs here are entitled to the relief they are requesting in this case.

1

## RELEVANT PROCEDURAL BACKGROUND

The *Harper* plaintiffs filed an action on September 27, 2019 in Wake County Superior Court seeking a declaration that the congressional districts enacted by the General Assembly in 2016 under N.C. Sess. Law 2016-1 violated their rights under the North Carolina Constitution and sought to enjoin future use of the 2016 congressional districts ("the 2016 Congressional Plan"). The *Harper* plaintiffs filed a motion for preliminary injunction on September 30, 2019, the same day Legislative Defendants were served, seeking to enjoin the 2020 primary and general elections for congressional districts under the 2016 Congressional Plan. The superior court granted the *Harper* plaintiffs' motion on October 28, 2019 and stated that it would enter a further order to "provide for an expedited schedule so that [the *Harper*] Plaintiffs' dispositive motion may be heard prior to the close of the filing period of the 2020 primary election." (Order on Injunctive Relief, p. 16 (Oct. 28, 2019)). On November 1, 2019, the Superior Court entered an order setting an expedited schedule for the filing, briefing, and hearing of summary judgment motions. (Order, p.2 (Nov. 1, 2019)).

In its order granting the *Harper* Plaintiffs' motion, the Superior Court stated that it did not "presume, at this early stage of this litigation, to have any authority to compel the General Assembly to commence a process of enacting new Congressional districts," but expressed concerns about potential disruptions to the 2020 elections process and noted that "these disruptions to the election process need not occur, nor may an expedited schedule for summary judgment or trial even be needed, should the General Assembly, on its own initiative, act immediately and with all due haste to enact new congressional districts." (*Id.* at p. 17).

On November 5, 2019, the General Assembly, at the Superior Court's invitation but on its own initiative, began the process of enacting a new congressional plan for the 2020 election cycle

when a Joint Committee on Redistricting made up of both Democratic and Republican members of the North Carolina House and Senate convened for the first time. To allow for full participation by the public and all interested parties in the map-drawing process, the Committee opened up rooms and public terminals for legislators to use to draw proposed maps on November 6, 7, 8, 12, 13, 14 and 15. On each of these days, legislators also used these public terminals to draw proposed maps and, if the legislator requested, legislative staff produced stat packs and related reports and documents for any maps drawn.[1] Copies of all maps drawn and any stat packs or other documents that were requested were posted online on the General Assembly's website. Public comments were accepted online and posted on November 7, 18 and 12, and a public hearing was held on November 13, 2019. Multiple proposed maps were discussed in the House Elections and Ethics Committee and on the House floor on November 14, 2019, and in the Senate Redistricting and Elections Committee and on the Senate floor on November 15, 2019. This process ended on November 15, 2019, with the enactment of H.B. 1029 which immediately replaced the 2016 Congressional Plan enacted in N.C. Session Law 2016-1 with the 2019 Congressional Plan.[2] *See* N.C. Sess. Law 2019-249 (stating that "G.S. 163-201(a) is rewritten" and that "[t]his act is effective when it becomes law.").

---

[1] No partisan data was included in the stat packs or loaded into the computer terminals used to draw proposed maps.

[2] The court can take judicial notice of this legislation. *See Hoke Co. Bd. of Educ.*, 367 N.C. at 159, 749 S.E.2d at 454 (citing *Wikel v. Bd. of Comm'rs of Jackson Cnty.,* 120 N.C. 311, 120 N.C. 451, 27 S.E. 117 (1897)). A link to a map of the 2020 Congressional Plan, along with stat packs and other reports, may be found at: https://www.ncleg.gov/BillLookup/2019/H1029

# ARGUMENT

## I. This Case is Moot.

Due to the enactment of the 2019 Congressional Plan, both the *Harper* case and this case are moot and both cases should be dismissed. The effect of H.B. 1029 (codified as Session Law 2019-249) on the *Harper* case is clear from the Superior Court's October 28, 2019 Order on Injunctive Relief: there is no need for further proceedings in the *Harper* case because the 2016 Congressional Plan challenged by *Harper* Plaintiffs, N.C. Session Law 2016-1, has been replaced. This result is the right one under a line of North Carolina appellate cases holding that, in litigation, whenever "the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929 (1979)) ("Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action.").

When the General Assembly "revises a statute in a 'material and substantial' manner with the intent 'to get rid of a law of dubious constitutionality,' the question of the act's constitutionality becomes moot." *Hoke County Bd. of Educ. v. State*, 367 N.C. 156, 159-60, 749 S.E.2d 451, 454-55 (2013) (citing *State v. McCluney*, 280 N.C. 404, 405-07, 185 S.E2d 870, 871-72 (1972)). And, where, as here, a statute is replaced, it is inappropriate for a court to "express" an "opinion of the legislation now in effect" because questions regarding the constitutionality of the new legislation (i.e. the 2020 Congressional Plan) "are not before" the Court in this case. *Id*.

4

In *Stephenson v. Bartlett*, 358 N.C. 219, 595 S.E. 2d 112 (2004) ("*Stephenson III*"), the North Carolina Supreme Court followed this approach in a redistricting matter when it declared, "[t]he case is over," after the General Assembly enacted a legislative redistricting plan in 2003 following successful challenges by the *Stephenson* plaintiffs to previous plans enacted earlier in the decade. *Id.* at 225-226, 595 S.E.2d at 117. While the *Stephenson* court acknowledged that it was "nevertheless aware that legislative redistricting based upon the 2000 decennial census remains an unresolved matter," it found that if the *Stephenson* plaintiffs wanted to challenge the constitutionality of the 2003 legislative plans, they had to do so in another case under the three-judge panel statute that had recently been enacted by the General Assembly. *Id*. at 226, 595 S.E.2d at 117.

The North Carolina Court of Appeals applied the mootness doctrine in *Calabria v. North Carolina State Bd. of Elections*, 198 N.C. App. 550, 680 S.E.2d 738 (2009) where the General Assembly amended the public campaign financing statute at issue in that case before the plaintiff's appeal challenging an interpretation of the statute could be heard by the court. In dismissing the appeal as moot, the Court of Appeals relied upon the North Carolina Supreme Court's admonition in *Pearson v. Martin*, 319 N.C. 449, 355 S.E.2d 496 (1997), that the fact that an "action was brought as a declaratory judgment action does not alter this result" because "[u]nder the Declaratory Judgment Act, jurisdiction does not extend to questions that are altogether moot." 198 N.C. App. at 554-555, 680 S.E2d at 743 (citing *Pearson*, 319 N.C. at 451, 355 S.E.2d at 498).

Legislative Defendants believe that the *Harper* state court should follow this line of cases and dismiss that case because "the questions originally in controversy between the parties"— whether the 2016 Congressional Plan violated Plaintiffs' rights under the North Carolina Constitution—are "no longer at issue" following the enactment of H.B. 1029. This law replaced

5

the statute challenged by the *Harper* Plaintiffs, N.C. Session Law 2016-1, with an entirely new congressional plan. To the extent Plaintiffs seek to challenge the congressional plan enacted under H.B. 1029, they must file a new lawsuit because "[t]he case is over." *Stephenson v. Bartlett*, 358 N.C. at 226, 595 S.E. 2d at 117; *see also Hoke Co. Bd. of Educ.*, 367 N.C. at 160, 749 S.E.2d at 455 ("We express no opinion on the legislation now in effect because questions of its constitutionality are not before us."); *McCluney*, 280 N.C. at 407, 185 S.E.2d at 872 ("We express no opinion as to the constitutionality of the repealed [statute]. The constitutionality of the [sessional law repealing it] does not arise on this appeal. That question will be decided if and when it is presented.").

**II.    If *Harper* is not Dismissed as Moot by the State Court, this Court Should Grant the *Brewster* Plaintiffs the Relief They Seek as to the 2019 Congressional Plan.**

If the *Harper* Court dismisses that case on the grounds of mootness and the *Harper* plaintiffs do not appeal, then this pending case is also moot. However, if the *Harper* state court does not dismiss the *Harper* case (or if the *Harper* plaintiffs appeal any order dismissing the *Harper* lawsuit) then the issues raised by the plaintiffs in the instant case are not moot and plaintiffs in this case should receive the relief they are requesting as to the 2019 Congressional Plan. The 2019 Congressional Plan was enacted on November 15, 2019, with well enough time to implement it with no disruption to the 2020 election cycle. Legislative Defendants agree that it is now too late to implement any congressional plan other than the current lawful plan—the 2019 Congressional Plan—and that this Court should protect the important federal constitutional interests of the *Brewster* plaintiffs in stable election districts that can be implemented without further delay. Moreover, legislative defendants agree that the *Purcell* doctrine cited by the *Brewster* plaintiffs should operate to bar any court—including the state court—from making any further last minute changes to North Carolina's congressional districts.

6

## CONCLUSION

For the forgoing reasons, the Court should dismiss this case as moot if the *Harper* state court dismisses the *Harper* litigation and plaintiffs do not appeal that order. If the *Harper* state court declines to dismiss the *Harper* case, or if plaintiffs appeal any dismissal order, or until such time as the *Harper* litigation is finally resolved in state court, then the plaintiffs in this case should receive the preliminary relief they have requested as to the 2019 Congressional Plan.

Respectfully submitted this the 22nd day of November, 2019.

<div style="margin-left:50%">

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Thomas A. Farr
N.C. State Bar No. 10871
Michael McKnight
N.C. State Bar No. 36932
Alyssa M. Riggins
N.C. State Bar No. 52366
phil.strach@ogletreedeakins.com
tom.farr@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
alyssa.riggins@ogletreedeakins.com
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
*Counsel for the Legislative Defendants*

</div>

BAKER & HOSTETLER, LLP

E. Mark Braden*
(DC Bar #419915)
Katherine McKnight*
(DC Bar # 99456)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
*Counsel for Legislative Defendants*
*\*appearing Pro Hac Vice*

**CERTIFICATE OF SERVICE**

It is hereby certified that on this date I caused the foregoing document to be filed and served on all counsel of record by operation of the CM/ECF system for the United States District Court for the Eastern District of North Carolina.

This the 22nd day of November, 2019.

                                        By: /s/Phillip. J. Strach
                                        Phillip J. Strach (N.C. State Bar No. 29456)

40810924.1