# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 2:19-cv-00037-FL

| | |
|---|---|
| BILLY JOE BREWSTER, JR.; LARRY E. NORMAN; and THOMAS L. HILL, on behalf of themselves and others similarly situated. | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| PHILLIP E. BERGER, in his official capacity as Speaker Pro Tempore of the North Carolina Senate; TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives; DAMON CIRCOSTA, STELLA ANDERSON, JEFF CARMON III, DAVID C. BLACK, KEN RAYMOND and KAREN BRINSON BELL, in their official capacities as officers or members of the North Carolina State Board of Elections. | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |
| _____ | ) |

## CORRECTED
## STATE BOARD'S OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .......................................................................................................1

STATEMENT OF FACTS ...........................................................................................3

LEGAL STANDARD..................................................................................................5

ARGUMENT ..............................................................................................................6

    I.    Plaintiffs Are Unlikely to Succeed in Their Collateral Attack on the State Court Injunction ..........................................................................................................6

        A.    This Court Should Not Unilaterally Strike Down the Injunction Ordered by the State Court.......................................................................................6

            1.    This Court should "stay its hand" and decline to interfere in the state-court proceedings ..................................................6

            2.    Efficient judicial administration and conservation of judicial resources counsel in favor of this Court declining to enjoin the state-court proceedings ...................................8

        B.    Federal Courts Do Not Require That Elections Be Administered Under Unconstitutional Maps ...............................................................................14

            1.    There Is No Substantial Risk of Voter Confusion or Election Disruption ...........................................................14

            2.    *Purcell* Does Not Require This Court's Intervention Here...............................................................................17

    II.    Plaintiffs Would Suffer Little Irreparable Harm if Their Request Were Denied. ...................................................................................................23

    III.    The Balance of the Equities Counsels Denying the Injunction. ............................24

    IV.    The Public Interest Weighs in Favor of Denying the Injunction ...........................26

CONCLUSION..........................................................................................................26

i

# TABLE OF AUTHORITIES

Page

## Cases

Al-Abood ex rel. Al-Abood v. El-Shamari
    217 F.3d 225 (4th Cir. 2000) ............................................................................9

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,
    357 F.3d 260 (2d Cir. 2004)........................................................................16, 20

Beck v. CKD Praha Holding, A.S.,
    999 F. Supp. 652 (D. Md. 1998) ..................................................................11

Benisek v. Lamone,
    138 S. Ct. 1942 (2018)................................................................................19

Bethune-Hill v. Va. State Bd. of Elections,
    368 F. Supp. 3d 872 (E.D.V.A. 2019) ......................................................19, 20

Chase Brexton Health Services v. Maryland,
    411 F.3d 457 (4th Cir. 2005) ......................................................................10

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800 (1976).................................................................................8, 9

Connection Distribution Co. v. Reno,
    154 F.3d 281 (6th Cir. 1998) ......................................................................23

Covington v. North Carolina,
    283 F. Supp. 3d 410 (M.D.N.C. 2018) .......................................................19

Doe v. Reed,
    561 U.S. 186 (2010)....................................................................................19

Elrod v. Burns,
    427 U.S. 347 (1976)....................................................................................23

Flanders Filters, Inc. v. Intel Corp.,
    93 F. Supp. 2d 669 (E.D.N.C. 2000)...........................................................10

Frank v. Walker,
    574 U.S. 929 (2014)....................................................................................21

Growe v. Emison,
    507 U.S. 25 (1993).............................................................................1, 6, 7, 8

*Harris v. McCrory,*
    159 F. Supp. 3d 600 (M.D.N.C. 2016) ................................................................22

*Hartford Fire Ins. Co. v. Kinston Plumbing & Heating Co., Inc.,*
    868 F. Supp. 120 (E.D.N.C. 1994)................................................................8, 9

*Howard v. Klynveld Peat Marwick Goerdeler,*
    977 F. Supp. 654 (S.D.N.Y. 1997) ................................................................11

*Hunt v. Mortg. Elec. Registration,*
    522 F. Supp. 2d 749 (D.S.C. 2007)................................................................10

*Husted v. Ohio State Conference of the NAACP,*
    573 U.S. 988 (2014)................................................................21

*Kelbe Corp. v. Hall,*
    789 F. Supp. 241 (S.D. Ohio 1992) ................................................................13

*Mahoney v. Burkhardt,*
    299 F. Supp. 787 (D.N.J. 1969) ................................................................6

*Martin v. Augusta-Richmond Cty.,*
    No. CV 112-058, 2012 WL 2339499 (S.D. Ga. June 19, 2012)........................................20

*Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship,*
    918 F.3d 353 (4th Cir. 2019) ................................................................5

*NAACP-Greensboro Branch v. Guilford Cty Bd. of Elections,*
    585 F. Supp. 2d 516 (M.D.N.C. 2012) ................................................................20

*New Beckley Mining Corp. v. Intl. Union,*
    946 F.2d 1072 (4th Cir. 1991) ................................................................8

*North Carolina v. Covington,*
    138 S. Ct. 2548 (2018)................................................................18, 19

*North Carolina v. League of Women Voters,*
    574 U.S. 927 (2014)................................................................21

*Otto v. Kusper,*
    No. 81 C 4103, 1981 U.S. Dist. LEXIS 18879 (N.D. Ill. Aug. 21, 1981)..........................7

*Personhuballah v. Alcorn,*
    155 F. Supp. 3d 552 (E.D.V.A. 2016) ................................................................15, 20

ii

*Poston v. John Bell Co. Inc.,*
No. 5:07-cv-00757, 2008 U.S. Dist. LEXIS 65706 (S.D.W.V. Aug. 27, 2008)...............10

*Purcell v. Gonzales,*
549 U.S. 1 (2006)................................................................................................ passim

*Riley v. Kennedy,*
553 U.S. 406 (2008)............................................................................................19

*Rivera v. Bowen,*
664 F. Supp. 708 (S.D.N.Y. 1987) ...................................................................11

*Rucho v. Common Cause,*
139 S. Ct. 2482 (2019)........................................................................................12

*Scott v. Germano,*
381 U.S. 407 (1965)..............................................................................................6

*Serlin v. Arthur Andersen & Co.,*
3 F.3d 221 (7th Cir. 1993) .................................................................................11

*Stephenson v. Bartlett,*
582 S.E.2d 247 (N.C. 2003)...............................................................................23

*Straw v. Barbour Cty.,*
864 F. Supp. 1148 (M.D. Ala. 1994) ................................................................20

*Talecris Plasma Res., Inc. v. G&M Crandall Family Ltd. P'ship,*
No. 5:08-cv-583-FL, 2009 U.S. Dist. LEXIS 78911 (E.D.N.C. July 27, 2009)...............10

*The Haytian Republic,*
154 U.S. 118 (1894)............................................................................................11

*The Real Truth About Obama, Inc. v. F.E.C.,*
575 F.3d 342 (4th Cir. 2010)................................................................................5

*Va. House of Delegates v. Bethune-Hill,*
139 S. Ct. 2715 (2019)........................................................................................20

*Veasey v. Abbott,*
830 F.3d 216 (5th Cir. 2016) .............................................................................21

*Vulcan Chem. Techs. Inc. v. Barker,*
297 F.3d 332 (4th Cir. 2002) ..........................................................................9, 12

iii

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)..............................................................................................................6

**Statutes**

N.C. Gen. Stat. § 163-19..............................................................................................................15

N.C. Gen. Stat. § 163-22..............................................................................................................15

N.C. Sess. Law 2011-411 ............................................................................................................17

N.C. Sess Law 2011-416 .............................................................................................................17

Defendants Damon Circosta, Stella E. Anderson, David C. Black, Ken Raymond, and Jefferson Carmon III, in their official capacities as members of the North Carolina State Board of Elections, and Karen Brinson Bell, in her official capacity as Executive Director of the North Carolina State Board of Elections (collectively, the State Board), oppose Plaintiffs' motion for preliminary injunction asking this Court to strike down the injunction entered in the case *Harper v. Lewis*, No. 19 CVS 012667 by the Superior Court of Wake County and require the State Board to administer the 2020 elections under the 2016 congressional maps.

## INTRODUCTION

Plaintiffs ask this Court to effectively overturn a state-court order involving the state constitutional rights of millions of North Carolina voters because that state-court order would inconvenience them. But inconvenience alone does not give rise to constitutional harm. Nor does it justify the extraordinary remedy that Plaintiffs seek here. In fact, Supreme Court precedent squarely forecloses Plaintiffs' federal collateral attack against state adjudication of election administration procedures. *Growe v. Emison*, 507 U.S. 25 (1993). Adherence to this precedent is especially important where, as here, the remedy Plaintiffs seek would lead to greater public confusion and hinder the State Board's ability to educate voters and fairly and efficiently administer the 2020 elections.

In September, a group of individual voters (the *Harper* plaintiffs) brought a challenge in state court based on the North Carolina Constitution against the use in the 2020 elections of the congressional redistricting plan passed in 2016. A group of current congressional representatives later intervened as defendants in the state-court action. On October 28, after briefing and a hearing on the *Harper* plaintiffs' motion, the state court issued an injunction against the use of

the 2016 Plan in the 2020 elections. The General Assembly has since enacted new congressional districts in response to the state-court injunction.

Three days later, a group of voters and a potential congressional candidate filed this lawsuit, alleging violations of the U.S. Constitution and asking this Court to undo the state-court order and require that the 2016 Plan, which the state court has held likely violates the North Carolina Constitution, nevertheless be used in the 2020 elections. Even though the candidate filing period has not even begun, Plaintiffs claim that their rights will be infringed if any plan other than the 2016 Plan is used to administer the 2020 elections.

This Court should deny Plaintiffs' extraordinary motion. First, this Court should decline to exercise jurisdiction over this matter. The state-court proceedings involve the same issues raised by substantially similar parties and are in a much more procedurally advanced than this case. This case also presents the potential for competing and contradictory findings and rulings, resulting in greater confusion as the State Board attempts to prepare to administer the 2020 elections.

But even if this Court were to exercise jurisdiction over this case, it should still deny Plaintiffs' motion. Neither the Supreme Court nor other federal courts require that the court turn a blind eye to constitutional violations simply because there is an upcoming election. Indeed, the history of the 2016 Plan itself proves this—the 2016 Plan was finalized *after ballots had already been printed using a constitutionally invalid plan*. And yet, federal courts—including the U.S. Supreme Court—required the use of the 2016 Plan after the campaign season was already underway because the importance of correcting constitutional violations outweighed the inconvenience of plans changing.

2

Nor have Plaintiffs provided sufficient evidence that the state court's adjudication of state constitutional claims will significantly impact Plaintiffs here or North Carolina voters more broadly. The State Board has consistently informed the state court of the parameters for administration of elections and the state court's orders have taken these parameters into account. On the other hand, Plaintiffs' claims of voter confusion and administration difficulty resulting from the state court's adjudication are based on assumptions.

Moreover, while there may be some inconvenience to Plaintiffs if a new plan were enacted, such inconvenience is greatly outweighed by the harm that would result by this Court's intervention in the state-court proceedings. The state-court proceedings involve important issues of North Carolina constitutional law that affect every voter in North Carolina. In addition, duplicative and contradictory orders from this state's federal and state courts will likely result in the same confusion Plaintiffs here claim to want to avoid.

For all of these reasons, this Court should stay its hand and deny Plaintiffs' motion for preliminary injunction.

## STATEMENT OF FACTS

This case is a collateral attack against a state-court proceeding.

On September 27, a group of voters filed a complaint in the Superior Court of Wake County seeking a declaration that the 2016 Plan violates the rights of the voters under various provisions of the North Carolina Constitution. Ex. A at 1-2. The *Harper* plaintiffs then moved for a preliminary injunction seeking to bar the State Board from administering the 2020 elections using the 2016 Plan. *Id.* at 2. On October 9, three incumbent congressional representatives and prospective candidates filed a motion to intervene to defend the 2016 Plan, and that motion was granted. *Id.* at 2, 3. In their responses to the *Harper* plaintiffs' motion for preliminary

3

injunction, the Legislative Defendants and Intervenor Defendants opposed the motion on, *inter alia*, two grounds: (1) that *Purcell v. Gonzales*, 549 U.S 1 (2006), prohibits suspension of the use of the 2016 Plan because any changes to election procedures at this time would lead to voter confusion and the inefficient administration of elections; and (2) that their constitutional rights as the General Assembly, voters, and congressional candidates would be infringed as a result of any injunction against the use of the 2016 Plan. *Harper v. Lewis*, No. 19-cv-452, Dkt. 32 (E.D.N.C.); Ex. B.

On October 28, the state court granted the *Harper* plaintiffs' motion and enjoined the use of the 2016 Plan in the 2020 elections. [D.E. 1-1 at 18.] The state court held that the "Plaintiffs' and all North Carolinians' fundamental rights guaranteed by the North Carolina Constitution will be irreparably lost . . . if the injunction is not granted." "Simply put, the people of our State will lose the opportunity to participate in congressional districts conducted freely and honestly to ascertain, fairly and truthfully, the will of the people. The Court finds that this specific harm to Plaintiffs absent issuance of the injunction outweighs the potential harm to Legislative Defendants if the injunction is granted." Ex. A at 15.

Particularly, in response to Legislative Defendants' and Intervenor Defendants' argument that "the issuance of the injunction will result in disruption, confusion, and uncertainty in the electoral process," the court held that "such a proffered harm does not outweigh the specific harm to Plaintiffs form the irreparable loss of their fundamental rights guaranteed by the North Carolina Constitution." *Id.* Finally, the state court invited the General Assembly to remedy the 2016 Plan's likely constitutional defects by enacting new districts. *Id.* at 17.

On November 15, the General Assembly enacted new congressional districts (2019 Plan). N.C. Sess. Law 2019-249. Concurrently, the parties have briefed motions for summary

judgment and those motions are scheduled to be heard on December 2, along with the *Harper* plaintiffs' objections to the 2019 Plan. Ex. C.

Three days after the state court issued its injunction, Plaintiffs in this case—individual voters and one prospective congressional candidate—filed this action. They raise allegations that any change to the 2016 Plan at this point will violate their constitutional rights by sowing confusion in the 2020 congressional elections [D.E. 23 at 1]—the same arguments raised by the Legislative Defendants and the Intervenor Defendants in the state-court case. Plaintiffs in this case also moved for a preliminary injunction, asking this Court to enjoin any changes to the 2016 Plan, [D.E. 22], which, at this point, would require the Court to (1) enjoin Session Law 2019-246 that enacted the 2019 Plan, (2) overrule the state court's injunction barring the use of the 2016 Plan, and (3) order the State Board to administer the 2020 elections under the 2016 Plan.

## LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief' and may never be awarded 'as of right.'" *Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7 at 22, 24 (2008)). The test for the issuance of a preliminary injunction turns on the balance of the four *Winter* factors: likelihood of success on the merits, irreparable harm in the absence of an injunction, equities to the parties, and the public interest. *Winter*, 555 U.S. at 20. A plaintiff must successfully show that she is likely to succeed on the merits, "regardless of whether the balance of hardships weighs in his favor." *The Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2010), *vacated on other grounds*, 559 U.S. 1089 (2010). Plaintiffs bear the burden of proof on each factor. *Winter*, 555 U.S. at 20.

**ARGUMENT**

I.   **Plaintiffs Are Unlikely to Succeed in Their Collateral Attack on the State Court Injunction.**

Plaintiffs' claim hinges on one premise: That this Court should strike down an injunction ordered by a state court because the United States Supreme Court forbids "last minute changes [to elections administration] . . . regardless of what the underlying merits of the election procedures used in the election might be." [D.E. 23 at 14.] This premise fails on two grounds: (1) federal district courts ordinarily should not interfere with state-court decisions on redistricting and (2) neither the Supreme Court, nor other federal courts, have ever articulated a rule that requires the continued administration of elections laws that would otherwise violate the constitutional rights of voters.

A.   **This Court Should Not Strike Down the Injunction Ordered by the State Court.**

Plaintiffs invite this Court to enjoin state-court proceedings by reversing an injunction entered by the state court and ordering the State Board to administer the 2020 elections under the congressional map that the state court has enjoined. This Court should not interfere with the state-court proceedings in this manner.

1.   **This Court should "stay its hand" and decline to interfere in the state-court proceedings.**

Because the state court is already adjudicating the *Harper* plaintiffs' claims, as well as the same substantive challenges that Plaintiffs in this case bring, this Court should "stay its hand" and allow the state court to fully adjudicate the state-constitutional claims in *Harper*. *Scott v. Germano*, 381 U.S. 407, 409 (1965). This restraint is particularly important where, as here, redistricting claims—which are traditionally the province of states—are at issue. *Growe v. Emison*, 507 U.S. 25, 34 (1993); *see also Mahoney v. Burkhardt*, 299 F. Supp. 787, 789 (D.N.J.

6

1969) (holding that "abstention under general equitable considerations in this instance is truly in the interest of all the people" because the state court had already begun adjudicating the constitutionality of the state's congressional apportionment); *Otto v. Kusper*, No. 81 C 4103, 1981 U.S. Dist. LEXIS 18449, at *4-5 (N.D. Ill. Aug. 21, 1981) (holding that the state-court challenge to congressional districts should be permitted to proceed without interference from the federal court).

In *Growe*, a group of voters filed a lawsuit in state court alleging that the state's congressional and legislative districts were malapportioned. 507 U.S. at 27. While this case made its way through the state courts, a second group of plaintiffs filed an action in federal court against the same defendants, raising substantially the same challenges to the redistricting plan. *Id.* at 28. The state court determined that the challenged plan was unconstitutional and indicated that it would release a final remedial redistricting plan. *Id.* at 29-30. But before it did so, the federal court stayed all proceedings in state court and enjoined the parties from taking any action to implement a different plan. *Id.* at 30. The Supreme Court held that the federal court was wrong to interfere in the state-court proceeding because in "the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Id.* at 33. Because "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court," "[a]bsent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id.* at 34 (internal citations and quotation marks omitted). The Court explained that the state "can have

only one set of legislative districts, and the primacy of the State in designing those districts compels a federal court to defer." *Id.* at 35.

*Growe* is directly on point. Like the federal plaintiffs in *Growe*, Plaintiffs here ask this Court to stay all proceedings in state court by enjoining Defendants from taking any action to implement any plan other than the 2016 Plan. And like in *Growe*, here a North Carolina court "has begun to address" a redistricting dispute before the federal court was invited to intervene. *Id*. at 33. In fact, the North Carolina legislature has also been involved in remedying the dispute by enacting new districts. Under *Growe*, this Court "must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it," which is precisely what Plaintiffs invite here. *Id.* at 34.

Because the state court is in the middle of adjudicating the *Harper* plaintiffs' constitutional challenge to the 2016 Plan, this Court should defer to the state court to determine the appropriate redistricting plan for the 2020 elections.

> ### 2. Efficient judicial administration and conservation of judicial resources counsel in favor of this Court declining to enjoin the state-court proceedings.

Federal courts also abstain from exercising jurisdiction over cases in deference to parallel state-court proceedings where abstention will promote judicial administration, conserve judicial resources, and provide comprehensive disposition of litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). While abstention "is the exception, not the rule," and "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them," *New Beckley Mining Corp. v. Intl. Union*, 946 F.2d 1072, 1073 (4th Cir. 1991), where there is a declaratory-judgment action in which a potential parallel state-court action already exists, federal courts will more likely abstain from adjudication. *Hartford Fire*

*Ins. Co. v. Kinston Plumbing & Heating Co., Inc.*, 868 F. Supp. 120, 121-22 (E.D.N.C. 1994). This case presents precisely one of those instances in which this Court should abstain from adjudicating a declaratory-judgment action in which there is a parallel state-court proceeding.

Determining whether abstention is warranted under *Colorado River* requires a two-step process. First, the concurrent state and federal actions must actually be parallel. *Vulcan Chem. Techs. Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002). Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000).

The parties in this action raise the same issues as the parties in the state-court action. In the state-court action, the *Harper* plaintiffs challenge the constitutionality of the 2016 Plan and raise only state constitutional issues. In defending the 2016 Plan, the Legislative Defendants argued that *Purcell* precluded the court from implementing a new redistricting plan at that time. *Harper v. Lewis*, No. 19-cv-00452, Dkt. 32 at 19-23 (E.D.N.C.). This is, in fact, the same argument that Plaintiffs in this case make to collaterally attack the state-court injunction. To the extent that Plaintiffs in this case characterize their *Purcell* challenge as allegations that the state-court case infringes on the rights of voters and candidates, this was also an argument that was raised by the Legislative Defendants and Intervenor Defendants—and considered and rejected by the state court—in the state-court proceeding. *Id.* at 2 ("It is, quite simply, impossible through a judicial remedial process for a new plan to be created, enacted, approved, and implemented before candidate qualification begins, and the campaign season is already underway. And, because the harms to the Defendants (and all congressional candidates and voters, alike) overwhelmingly outweigh the harm to Plaintiffs, the equities alone bar relief."); Ex. C at 7-8, 28-

31 (arguing that striking down the 2016 Plan will substantially harm candidates and citizens' rights to vote for candidates of their choosing).

Plaintiffs in this action have merely converted these defenses into claims in this federal action. The parties in the state-court action are therefore litigating the same issues in state court as they would be asked to litigate in this matter. And, in fact, the defendants in the state court action have already raised the same arguments raised by Plaintiffs here—only to have the state court consider and reject them. *See supra* pp. 3-4.

The State Board acknowledges that Plaintiffs here are not participants in the state-court litigation. But this fact does not defeat the parallelism between the state-court action and this case. While courts in this Circuit have "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical," *Chase Brexton Health Services v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005), courts have not interpreted this to require total and complete overlap. Indeed, "[i]dentical parties are not required in order for the two actions to be parallel. *Flanders Filters, Inc. v. Intel Corp.*, 93 F. Supp. 2d 669, 672 (E.D.N.C. 2000); *see also Talecris Plasma Res., Inc. v. G&M Crandall Family Ltd. P'ship*, No. 5:08-cv-583-FL, 2009 U.S. Dist. LEXIS 78911, at *8 (E.D.N.C. July 27, 2009) (finding sufficiently similar parties when interests are aligned); *Poston v. John Bell Co. Inc.*, No. 5:07-cv-00757, 2008 U.S. Dist. LEXIS 65706, at *9-10 (S.D.W.V. Aug. 27, 2008) (finding that parties are sufficiently similar when the unique federal party could have intervened in the state-court action and when the unique federal party's claims are raised in both proceedings); *Hunt v. Mortg. Elec. Registration*, 522 F. Supp. 2d 749, 753 (D.S.C. 2007) (finding sufficiently similar parties when all of the factual allegations and claims in the federal-court lawsuit were raised in state

10

court); *Beck v. CKD Praha Holding, A.S.*, 999 F. Supp. 652, 656 (D. Md. 1998) (finding that the proceedings were parallel because the defendants in each lawsuit were substantially the same).

Moreover, federal courts are accorded "a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). If the parties "represent the same interests," the actions may be duplicative. *Rivera v. Bowen*, 664 F. Supp. 708, 710 (S.D.N.Y. 1987) (citing *The Haytian Republic*, 154 U.S. 118, 124 (1894)). As long as the "same rights [are] asserted and the same relief prayed for," with the relief "founded upon the same facts," a federal court may find that an action is parallel to a state-court action. *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997).

Plaintiffs in this case have the same interests as the Legislative Defendants and Intervenor Defendants in the state-court case. They are voters and candidates who claim that any changes to the 2016 Plan will violate their constitutional rights and wreak havoc to the orderly administration of elections. This is precisely the same arguments that are made by the Legislative Defendants and Intervenor Defendants in the state-court case. *See supra* 3-4.

Moreover, the circumstances of this case give this Court practical reasons to not require total overlap of parties. This action involves the prospect of the courts of different sovereigns providing conflicting interpretations of the North Carolina Constitution as well conflicting instructions to an agency of the State on the conduct of upcoming statewide elections. Many of the cases in this Circuit requiring complete overlap of parties, on the other hand, involved private litigants and circumstances where the prospect of parallel litigation, even arriving at conflicting results, would have limited consequence. Here, however, federal-court intervention would have

11

far-reaching and immediate implications that would not just conflict with ongoing state-court proceedings, but would completely nullify them. Such a result would also contradict the Supreme Court's direction to district courts earlier this year to not intervene in partisan gerrymandering claims. *Rucho v. Common Cause*, 139 S. Ct. 2482, 2506-07 (2019) ("We conclude that partisan gerrymandering claims present political questions beyond the reach of the federal courts."). The Court held, instead, that those claims properly belong in state courts. *Id.* at 2507 ("Provisions in state statutes and state constitutions can provide standards and guidance for *state courts to apply*.") (emphasis added). Accordingly, while the parties do not overlap exactly, this case and the state-court case are parallel actions.

Since the state-court and federal-court actions are parallel, the court must next consider six factors in determining whether to abstain from the current lawsuit: (1) whether the subject matter of the litigation involves property on which the first court may assume jurisdiction to the exclusion of others, (2) whether the federal forum is an inconvenient one, (3) the desirability to avoid piecemeal litigation, (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action, (5) whether state law or federal law provides the rule of decision on the merits, and (6) the adequacy of the state proceeding to protect the parties' rights. *Vulcan Chem. Techs. Inc.*, 297 F.3d at 341 (4th Cir. 2002). These factors are not a checklist, but matters to be weighed by the court in considering whether to abstain. *Id.*

While this Court is not inconvenient to the parties and neither action involves property, the other factors weigh in favor of this Court's abstention from this action. The *Harper* plaintiffs have asked the state court to strike down the 2016 Plan as an unconstitutional partisan gerrymander under the North Carolina Constitution and to require the use of a new plan that adheres to the state's constitutional principles in the 2020 elections. Plaintiffs in this case ask

12

this Court to do the exact opposite: *require* that the State Board administer the 2020 elections under the 2016 Plan. This, alone, results in potential for conflicting injunctions and declarations from the courts. Moreover, because the state-court case was filed nearly two months before this case was filed, the state-court action has advanced considerably. On October 28, the state court issued an injunction forbidding the State Board from administering the 2020 election under the 2016 Plan. This case was filed on October 31, with an amended complaint filed on November 15. Moreover, motions for summary judgment have been briefed in the state court action and the state court intends to have a hearing on those motions on December 2. And finally, the General Assembly has passed new remedial plans for use in the 2020 elections. The *Harper* plaintiffs have moved the state court to review these plans to ensure that they are constitutionally compliant. The state court has scheduled that motion to be heard as well on December 2. For this Court to consider intervening now—after the state court has already enjoined the use of the 2016 Plan, the General Assembly has already passed remedial plans, motions for summary judgment have been briefed, and the state court has scheduled a hearing on both the remedial plans and motions for summary judgment—would require piecemeal litigation.

In addition, given the subject matter, it is most appropriate for this Court to abstain and allow the state court to adjudicate the claims raised in both actions. The *Harper* plaintiffs raise constitutional claims under the North Carolina Constitution—claims which state courts are uniquely suited to adjudicate. *See, e.g.*, *Kelbe Corp. v. Hall*, 789 F. Supp. 241, 242-43 (S.D. Ohio 1992) (holding that abstention is appropriate because a challenge to an election is "per se a matter that should be considered by state courts."). Plaintiffs here raise federal constitutional claims that are being raised and have been raised by defendants in the state-court action and that the state court is willing and able to adjudicate. *See supra* 3-4. Therefore, it is preferable for the

13

state court to continue to adjudicate the federal-law arguments raised by Plaintiffs here within the context of the state constitutional challenge.

To avoid duplicative, contradictory, and piecemeal litigation and to allow the state court to continue to exercise its unique expertise over issues involving state constitutional law, this Court should abstain from adjudicating the claims raised by Plaintiffs here.

**B.      Federal Courts Do Not Require That Elections Be Administered Under Unconstitutional Maps.**

Even if this Court were to determine that it should review the state-court injunction, Plaintiffs still would not prevail.  Plaintiffs first suggest that it is too late for the state court to consider the challenge under the North Carolina Constitution because it would disrupt the election process and promote too much voter confusion.  But the facts and evidence available squarely contradict this assumption.  And even if this Court were to give credence to Plaintiffs' assertion that any remedial orders by the state court would be late-breaking, Plaintiffs' reliance on *Purcell v. Gonzales*, 549 U.S. 1 (2006), is misplaced.

**1.      There Is No Substantial Risk of Voter Confusion or Election Disruption.**

Plaintiffs insist that "it is abundantly clear" that the state court's adjudication of challenges to the 2016 Plan under the North Carolina Constitution will cause "disruption to the orderly election process."  [D.E. 23 at 14.]  They recount harms that include depressed voter turnout, voter confusion, and candidate confusion, all affecting the ability of the State to administer a "transparent and efficient election."  *Id.* at 8.

Plaintiffs' assumptions are unfounded.

14

The State Board is a bipartisan body comprised of five members that is entrusted with administering elections in North Carolina. N.C. Gen. Stat. §§ 163-19, -22.[1] As part of that duty, the State Board implements the operative redistricting plan and works with all of North Carolina's county boards of elections to prepare and proof ballots, assign voters to the correct districts in the elections IT system for the distribution of ballots, and administer the election. *See* Ex. D at 1-2. In light of the important responsibility the State Board has in ensuring the fair administration of elections, the State Board's interests in both the state-court matter and this case are in ensuring that every North Carolinian who is eligible to vote and chooses to vote has her vote counted. The State Board also has unique expertise in knowing how best to administer fair and efficient elections.

It is this unique expertise that federal courts routinely rely on when deciding whether changes to election administration would take place too late to avoid confusion and disruption. In *Personhuballah v. Alcorn*, the Virginia Board of Elections explained to the court that it could not "provide a precise date at which implementation [of a new redistricting plan] would be impossible," but that "it would be critical to have a plan in place by late March," even though candidates were scheduled to file their candidacy forms on January 2 of that year. 155 F. Supp. 3d 552, 557 (E.D.V.A. 2016). This representation informed the court's decision to adopt a remedial redistricting plan for Virginia's congressional districts in advance of the Virginia Board

---

[1] Plaintiffs have, in their opposition to the *Harper* plaintiffs' motion to intervene, asserted that the Board has taken "partisan" positions in the state-court matter, to the detriment of "bipartisan or nonpartisan administration of election law in the state." [D.E. 34 at 4.] As counsel to Plaintiffs, who used to serve on the Board, well knows, this is a baseless accusation. Plaintiffs appear to confuse partisanship with the Board's right and obligation, as agents of the State, to take litigation positions consistent with the law—which is what the State Board did in the state-court matter. That Plaintiffs view the State Board's articulation of state law as "partisan" is unfortunate.

15

of Elections's March deadline.  *Id.* at 565.  Similarly, in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit turned to the County and its representations of the feasibility of administering new election procedures when it ordered a special primary that would implement an approved, revised redistricting plan.  357 F.3d 260, 263 (2d Cir. 2004).

The state court in *Harper* similarly relied on the State Board's representations about the feasibility of administering new election procedures when it entered the preliminary injunction. In *Harper*, the state court considered an affidavit of the State Board's Executive Director, Karen Brinson Bell, which had been filed months earlier in another state-court case challenging legislative districts.  Ex. D.  Bell informed the state court that the State Board expected it would need finality on the redistricting maps by December 15, 2019, at the latest, if the State Board were to administer primary elections using those districts in March 2020.  *Id.* at ¶ 10.  Bell also informed the state court about other timing-related parameters that would have to be taken into account if the court were to order a separate or later primary.  *Id.* at ¶¶ 14-18.  Taking this information into account, [D.E. 1-1 at 2], the state court enjoined the use of the 2016 Plan in the 2020 congressional elections and retained jurisdiction to move the primary date for the congressional elections if it became necessary to do so.[2]  Ex. A at 18.

---

[2]      It did so, however, only after observing that any disruptions that would result from the adjustment of the schedule for the 2020 congressional primary elections "need not occur" if the General Assembly enacted a new plan as it had "recently shown it has the capacity [to do] in a short amount of time in a transparent and bipartisan manner," that would be approved by the Court and "are more likely to achieve the constitutional objective of allowing for elections to be conducted more freely and honestly to ascertain, fairly and truthfully, the will of the people."  *Id.* at 17.

16

Moreover, this State's past experience in election administration bears this out. Indeed, the General Assembly continued to make changes to the original redistricting plan this decade as late as November 2011. *See, e.g.*, N.C. Sess. Laws 2011-411, 2011-416. These changes were made absent litigation challenges—during regular redistricting after the decennial census, the General Assembly had not finalized the 2011 redistricting plans until at least November 2011. And the legislature enacted the 2016 Plan on February 19, 2016, following the successful challenge of the original plan, and that map was used in the 2016 primary and general election. Plaintiffs provide no evidence for why changes made to the 2016 Plan now to correct constitutional violations would engender confusion that did not result in 2012 or 2016.

The State Board has informed the state court, based on its expertise in administering elections, of the parameters that would, in its estimation, have to be met to fairly and efficiently administer the 2020 elections. The state court, in turn—and like many courts before it—has relied on the information that the State Court has provided to adjudicate the constitutional claims before it in a manner that will not result in substantial voter or candidate confusion and will ensure the fair and efficient administration of elections. Plaintiffs' *Purcell*-related objections are therefore unfounded.

### 2. *Purcell* Does Not Require This Court's Intervention Here.

Plaintiffs assert that the Supreme Court's decision in *Purcell v. Gonzales*, 549 U.S. 1 (2006), prohibits the state court from enjoining the use of the unconstitutional 2016 congressional map and requiring that the State Board administer elections under a new, constitutionally compliant map. [D.E. 23 at 6, 14 n.1.] *Purcell* does no such thing. Nor do Plaintiffs cite any federal case that supports their position. In fact, federal courts have routinely

17

entertained constitutional challenges to elections-related laws specifically because of the weighty interests at stake for voters.

First, Plaintiffs misread *Purcell*. In *Purcell*, the Supreme Court was not articulating a per se bar against late-breaking changes to elections procedures. Rather, *Purcell* is a case about what is required to effect late-breaking changes through judicial actions. In *Purcell*, the Supreme Court reviewed the Ninth Circuit's divided "four-sentence order enjoining Arizona from enforcing Proposition 200's provisions pending disposition, after full briefing, of the appeals of the denial of a preliminary injunction." *Purcell v. Gonzales*, 549 U.S. 1, 3 (2006). The Court noted that the Ninth Circuit "offered no explanation or justification for its order. Four days later, the court denied a motion for reconsideration. The order denying the motion likewise gave no rationale for the court's decision." *Id.*

Plaintiffs' citation to the Court's notice of the "impending election" and the "necessity for clear guidance" is taken out-of-context. Plaintiffs fail to note the Court's explicit observation that there "has been no explanation given by the Court of Appeals showing the ruling and findings of the District Court to be incorrect. In view of the impending election, the necessity for clear guidance to the State of Arizona, and *our conclusion regarding the Court of Appeals' issuance of the order*, we vacate the order of the Court of Appeals." *Id.* (emphasis added).

The Court never suggested in *Purcell* that an impending election, alone, would provide a federal court with sufficient grounds to ignore constitutional violations. And the proof is in the pudding: The Court has cited to *Purcell* in a handful of other cases and in none does the Court cite *Purcell* for a proposition that a federal court is powerless to correct constitutional violations because there is an impending election. *See, e.g.*, *North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018) (citing *Purcell* to hold that a district court has a duty to cure illegally gerrymandered

18

districts in advance of elections); *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (citing *Purcell* to support a district court's discretion to deny a preliminary injunction and stay proceedings); *Doe v. Reed*, 561 U.S. 186, 197 (2010) (citing *Purcell* and holding that states have an interest in rooting out fraud from elections processes).[3] *Purcell* does not require this Court to strike down an injunction entered by a state court because the state court is adjudicating state constitutional claims that will affect an upcoming election.

Second, even other federal courts have not read *Purcell* to require a hands-off approach to all constitutional challenges to election administration because of an upcoming election. Indeed, in many cases, federal courts have adopted remedial redistricting plans that cure constitutional violations before impending elections, and some at times much closer to the election than the state-court injunction in *Harper*:

- In *North Carolina v. Covington*, the district court adopted a remedial plan for state legislative districts seven weeks before the end of the candidate filing period. *Covington v. North Carolina*, 283 F. Supp. 3d 410 (M.D.N.C. 2018). The district court's remedial redistricting plan was not affirmed by the U.S. Supreme Court until June 2018—seven weeks *after* the State had held primaries, and just four months before the general election. *Covington*, 138 S. Ct. at 2555.

- In *Bethune-Hill v. Virginia State Board of Elections*, the district court adopted a remedial plan for the Virginia House of Delegates in February 2019—more than

---

[3]     In *Riley v. Kennedy*, the Court did recognize "that practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges." 553 U.S. 406, 426 (2008). But in *Riley*, the Alabama Supreme Court was not able to render a decision until after an election took place. Here, the Board has informed the state court of the timing considerations for proper administration of elections and the state court has taken those considerations into account in its adjudication of the matter. *See* Ex. A.

19

six weeks after the candidate-filing period had begun and six weeks before the end of the candidate filing period. 368 F. Supp. 3d 872 (E.D.V.A. 2019). The redistricting plan was not final until a subsequent appeal was dismissed for lack of jurisdiction in June—weeks *after* the primary election and just four months before the general election. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 2715 (2019).

- In *NAACP-Greensboro Branch v. Guilford County Board of Elections*, the district court for the Middle District of North Carolina ordered the election of a new commissioner for one district of the Guilford County Commissioners, just four months before the primary election. 585 F. Supp. 2d 516 (M.D.N.C. 2012).

- In *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit reversed the district court's denial of the parties' request to order a special election for the Albany County Legislature and ordered that a special primary be held on the same date as the national primary elections—fewer than five weeks later. 357 F.3d 260 (2d Cir. 2004).

- In *Personhuballah v. Alcorn*, the district court adopted a remedial redistricting plan for Virginia's congressional districts in January 2016—even though the candidate filing period had already begun. 155 F. Supp. 3d 552 (E.D.V.A. 2016).

- In *Martin v. Augusta-Richmond County*, the district court adopted a remedial plan for the County Commission and the Board of Education in June 2012—almost a month after the original deadlines for candidate filing. No. CV 112-058, 2012 WL 2339499, at *16 (S.D. Ga. June 19, 2012). To accommodate the

20

implementation of the remedial plan, the court set new deadlines for candidate

filing for August—fewer than seven weeks from the date of the order.  *Id.*

- In *Straw v. Barbour County*, the district court adopted a remedial redistricting

  plan for the Barbour County Commission on September 13, 1994—two weeks

  before the end of candidate filing and less than a month before the primary

  election.  864 F. Supp. 1148 (M.D. Ala. 1994).

Not only is the case law replete with examples of federal courts correcting constitutional

defects in redistricting plans before an election, none of the cases Plaintiffs cite confirms the

theory that *Purcell* requires—or even supports—the injunction Plaintiffs seek here.  Indeed, the

Supreme Court's orders in *North Carolina v. League of Women Voters*, 574 U.S. 927 (2014),

*Husted v. Ohio State Conference of the NAACP*, 573 U.S. 988 (2014), and *Frank v. Walker*, 574

U.S. 929 (2014) make *no statements at all* about the timing of the relief sought.  They do not

mention *Purcell*, its principles, or the compressed nature of upcoming elections.  And the Fifth

Circuit in *Veasey v. Abbott*, which Plaintiffs also cite, undertook a comprehensive analysis of the

merits of the constitutional challenge, found that there was insufficient evidence of

discriminatory intent to warrant relief, and instructed the district court to reevaluate the evidence

before enacting a remedy.  830 F.3d 216, 243 (5th Cir. 2016).  This comprehensive analysis

proves just the opposite of Plaintiffs' presumption that *Purcell* requires rejection of constitutional

claims "regardless of [their] underlying merits."  [D.E. 23 at 14.]

Third, neither the history of North Carolina redistricting litigation nor the history of the

redistricting litigation *in this case* supports Plaintiffs' request for this Court's intervention.

Plaintiffs in this case ask this Court to strike down the 2019 Plan, strike down the state-court

injunction in *Harper*, and resurrect the 2016 Plan—all under the guise of a preliminary

injection—because Plaintiffs read *Purcell* to prohibit changes to a redistricting plan nearly four months before the State's primary election.  [D.E. 23 at 22.]  But Plaintiffs ignore the fact that the very plan they seek to resurrect is the product of late-breaking changes to a redistricting plan that were adopted *after ballots had been printed* and well after four months before the State's primary election.

In *Harris v. McCrory*, the district court struck down the 2011 congressional redistricting plan as unconstitutional racial gerrymanders on February 5, 2016—seven weeks before the deadline for candidate filing and four months before the State's primaries.  159 F. Supp. 3d 600, 627 (M.D.N.C. 2016).  The State Board, in concert with county boards of elections across the State, had already printed and approved the ballots—and had, in fact, already made them available for absentee voters.  Ex. E at 3-4, 13-14.  The General Assembly then enacted the 2016 Plan—the same plan Plaintiffs here ask this Court to resurrect—on February 19, roughly four weeks before the deadline for candidate filing.  *Id.*  Surely, if *Purcell* bars the state court from adjudicating the state-constitutional challenge to the 2016 Plan, it would have also barred the 2016 Plan from even coming into existence.  But neither the Middle District of North Carolina nor the U.S. Supreme Court objected to the 2016 Plan on *Purcell* grounds.[4]

Indeed, the 2016 Plan was not the first time in North Carolina's recent history that a court ordered the implementation of remedial districting plans in the face of impending elections.  On

---

[4]      Because the 2016 election was already underway, with absentee ballots having been distributed to voters—hundreds of which had already been returned—the State Board sought a stay from the U.S. Supreme Court of the district court's order requiring the adoption of a new redistricting plan and based its request on the fear that a new redistricting plan would result in "voter confusion and consequent incentive to remain away from the polls."  Ex. E at 3-4, 13-14 (citing *Purcell*, 549 U.S. at 4-5).  The Supreme Court subsequently denied the application for stay.

22

February 20, 2002, the state trial court struck down the 2001 state legislative districting plans and the North Carolina Supreme Court affirmed the trial court's order, enjoining the use of the 2001 plans. *Stephenson v. Bartlett*, 582 S.E.2d 247, 248-49 (N.C. 2003). The state Supreme Court ordered that the 2002 elections be conducted under a court-drawn remedial plan. *Id.*

There is no basis—either in the case law governing redistricting maps in this State, or in other jurisdictions—for Plaintiffs' claim that *Purcell* requires this Court to enjoin the use of the 2019 Plan, strike down the state-court injunction in *Harper*, and issue a mandatory injunction requiring that the State Board administer the 2020 elections under the 2016 Plan.[5] Plaintiffs cannot succeed on the merits of their claim.

## II. Plaintiffs Would Suffer Little Irreparable Harm if Their Request Were Denied.

Plaintiffs suggest that potential candidates and voters would suffer irreparable harm because their "past electioneering [will be] nullified and future electioneering infringed." [D.E. 23 at 16.] These are not legally cognizable harms.

There is no constitutional right for potential candidates to identify voters in their district and target them with campaign advertisements and solicitations at a certain time before primary elections. And Plaintiffs cite no case that grants candidates this right.[6] Indeed, if such a right

---

[5] Plaintiffs' counsel in this case argued precisely the opposite position and urged a state court to enjoin the use of the current judicial redistricting maps and adopt new maps as recently as November 18, 2019. In that case, plaintiffs' counsel argued that "it's not too much change" to enjoin the use of the current judicial redistricting map and use a different map instead. Plaintiffs' counsel also did not acknowledge any reliance interests for judicial candidates based on the current judicial redistricting map in that case either. *See* Ex. F at 47-48.

[6] All of the cases cited by Plaintiffs to support their claim of irreparable harm are inapposite. They involve the publication of allegedly obscene material, *see, e.g.*, *Connection Distribution Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), or a challenge to dismissal from employment based on the employee's political allegiance, *see, e.g.*, *Elrod v. Burns*, 427

existed, the Supreme Court would not have allowed the 2016 Plan to go into effect at a time after absentee ballots were already printed, distributed, and returned and ballots had already been printed. *See supra* pp. 22 n.4.

While voters have a constitutional right to assemble and campaign for candidates, Plaintiffs provide no support for the assertion that this right extends to campaigning for individuals who are not yet candidates. Candidate filing has not yet begun in North Carolina and is stayed pending the state court's review of pending motions. Ex. C. Therefore, Plaintiffs have not shown that the voters suffer irreparable harm by the state court's adjudication of the constitutionality of the 2016 Plan either. Moreover, any alleged harm to voters related to electioneering must be weighed against the state court's determination that moving forward with the 2016 Plan would likely violate the rights of voters to participate in elections whose results are not preordained for partisan motives. [D.E. 1-1 at 15.]

Plaintiffs' claim that future electioneering will be infringed by the state-court action is nonsensical. The state-court action does not enjoin any member of the public from engaging in political discussion. Potential candidates and their supporters may continue to participate in public debate. The choices that potential candidates make after the state court adjudicates the constitutional challenges presented about whether to run, for what office, and in what district are all choices that remain unimpeded. Neither voters nor potential candidates suffer any future harm because of the state court's adjudication of the claims presented.

## III.     The Balance of the Equities Counsels Denying the Injunction.

---

U.S. 347, 373 (1976). The irreparable harm discussed by these cases is dissimilar to the irreparable harm alleged by Plaintiffs here.

24

Plaintiffs' articulation of their harm centers on the fact that potential candidates and voters have used certain data and information based on the 2016 Plan to target campaign advertisements and solicitations and that these efforts may be rendered moot if district lines are changed. [D.E. 23 at 17-19.] The State Board does not deny that a potential candidate who is redistricted into a different district as a result of the state court's determination that the 2016 Plan is unconstitutional would be inconvenienced. First, Plaintiffs provide no evidence that any of Plaintiffs in this lawsuit would be affected by redistricting.

But even if Plaintiffs could provide that evidence, the balance of the equities counsels against granting this injunction. The defendants in the state-court action raised the same arguments in state court opposing the preliminary injunction and the state court considered and rejected these objections. Indeed, the state court noted that the defendants "contend the issuance of the injunction will result in disruption, confusion, and uncertainty in the electoral process for them, candidates, election officials, and the voting public." Ex. A at 14-15. But the state court held that "such a proffered harm does not outweigh the specific harm to Plaintiffs from the irreparable loss of their fundamental rights guaranteed by the North Carolina Constitution." *Id.* at 15. The state court also held that, "Plaintiffs' and all North Carolinians' fundamental rights guaranteed by the North Carolina Constitution will be irreparably lost, as discussed above, if the injunction is not granted. Simply put, the people of our State will lose the opportunity to participate in congressional elections conducted freely and honestly to ascertain, fairly and truthfully, the will of the people." *Id.* Accordingly, the state court found "that this specific harm to Plaintiffs absent issuance of the injunction outweighs the potential harm to Legislative Defendants if the injunction is granted." *Id.*

The considerations in this case are no different.  Allowing the state-court case to proceed, as it has, will help ensure that the rights of all North Carolina voters are protected.  The importance of fair and free elections outweighs the inconvenience of any electioneering delay that Plaintiffs complain of.

## IV.     The Public Interest Weighs in Favor of Denying the Injunction.

The public interest counsels against the requested injunction.  The State Board's interests in this matter involve—as they always do—the fair, efficient, and lawful administration of elections.  The state court is already adjudicating serious and important questions of state constitutional law as applied to the 2016 Plan.  It has already enjoined the use of the 2016 Plan and is in the middle of adjudicating motions for summary judgment and objections to the remedial plan passed by the General Assembly.  And it has already suspended candidate filing while it decides pending motions.  Ex. C.  For this Court to contradict the findings and proceedings of the state court and reverse the orderly disposition of the state-law claims—which were filed nearly two months before this case was filed—would create the very confusion that Plaintiffs here claim to seek to avoid.  It would also short-circuit the state court's consideration of important questions arising out of the state constitution and deprive the state court of the right to interpret issues of state law that affect every voter in North Carolina.  These considerations weigh in favor of this Court denying Plaintiffs' motion.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' request for preliminary injunction.


Respectfully submitted, this the 25th day of November 2019.

26

JOSHUA H. STEIN
Attorney General

*/s/* Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General
N.C. State Bar No. 35955
Email: sbrennan@ncdoj.gov

Amar Majmundar
Senior Deputy Attorney General
N.C. State Bar No. 24668
Email: amajmundar@ncdoj.gov

Paul M. Cox
Special Deputy Attorney General
N.C. State Bar No. 49146
Email: pcox@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-0185
Facsimile: (919) 716-6759

*Counsel for the State Board*

27

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing document with the clerk

of Court using the CM/ECF system which will send notification of such to all counsel of record in

this matter.

This 25th of November, 2019.

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General

Case 2:19-cv-00037-FL   Document 43   Filed 11/25/19   Page 34 of 34