IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 2:19-CV-00037-FL

BILLY JOE BREWSTER, JR., )
et al., )
                               )
    Plaintiffs, )
                               )
v. )
                               )
PHILLIP E. BERGER, etc., et al., )
                               )
    Defendants. )

**PLAINTIFFS' REPLY BRIEF TO DEFENDANTS' AND INTERVENORS' RESPONSES TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

In making this reply to Defendants' and Intervenors' Responses to the Motion for Preliminary Injunction, the Plaintiffs will be mindful of the Local Rules, which discourage unnecessary replies.[1] For the reasons discussed below, *inter alia*, Plaintiffs' Motion for Preliminary Injunction should be granted.

## II. LAW

Defendants' and Intervenors' Responses to Plaintiffs' Motion for Preliminary Injunction miss the point of the legal question the Plaintiffs ask, which is:

> *If the election cycle begins on December 2, 2020, under current state law, will any changes to the election districts necessarily violate the Constitutional rights of the Plaintiffs and those similarly situated?*

---

[1] We will respond to the Intervenors Motion to Dismiss as provided by the Local Rules.

The Federal Court answer to this question has nothing to do with the merits of the State Court controversy. Plaintiffs cannot and do not "collaterally attack" the State Court judgment, since Plaintiffs take no position on whether the 2016 plan or 2019 plan have defects. Plaintiffs assume they may be imperfect plans; however, Plaintiffs' point is only that under *Purcell* it is too late to make any of these changes for the upcoming elections.

The same issue applies to the Legislative Defendants' Response to Plaintiffs' Motion for Preliminary Injunction. As forecasted by the Plaintiffs, on November 15, 2019 election districts were changed by our State's Legislature. *See* House Bill 1029, *codified* as N.C. Sess. Law 2019-249 (November 15, 2019) ("2019 Congressional Plan"). With the new Congressional plans, the dates of the election had not changed. Later, however, on November 21, 2019, North Carolina's Wake County Superior Court, in *Harper v. Lewis*, 19–CV–012667 (North Carolina - Wake County), created a "Schrodinger's Cat"-like remedy by, on its own motion, enjoining filing for the Congressional election. As discussed previously, these events create confusion and impair the First Amendment rights of candidates, parties, and voters. Put differently, the public and political actors lack the certainty required for an electoral structure upon which election processes can take place under the First Amendment, equal protection and due process protections. For this question to be answered, it does not matter whether the State lawsuit is moot or not. Similarly, it does not matter whether the new Congressional plan is dead, alive, Constitutional, or invalid under the North Carolina Constitution. Plaintiffs' lawsuit is simply about timing.

*Growe v. Emison*, 507 U.S. 25, 26 (1993), makes this point: "Absent evidence that these state branches will *fail timely* to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." See also *Branch v. Smith*, 538 U.S. 254, 262, (2003) distinguishing *Growe* affirming District Court stay of state redistricting plan.  In this case, neither abstention nor staying Federal Court action is appropriate because there is abundant evidence that the North Carolina branches of government *will fail to timely perform that duty*.

At the moment, the stay in filing candidacy will result in North Carolina having no legal plan in place on December 2, 2019.  As a result, it is more likely than not that State authorities will be unable to *timely* conclude a Congressional plan for the scheduled elections.  Even if the State Court were able to come to a conclusion on December 2, which is unlikely, it would not be conclusive.  Under North Carolina statute and Federal law, after a plan is found infirm, the Legislature is given the opportunity to remedy the plan.  After a Legislative relief, the trial court can review it, and then it is subject to appeal.  We note that it took several years from the filing of the *Covington* case on racial gerrymandering for Federal and North Carolina State courts to come to conclusion.  *See Dickson v. Rucho*, 137 S.Ct. 2186 (2017); *N.C. v. Covington*, 137 S.Ct. 1624 (2017).  These redistricting rituals with North Carolina legislative maps have occurred so regularly in recent history that they are predictable.

It is not at all clear from the current posture of the State Court case whether or not the stay of candidate filing will be the only or final remedy.  This litigation just happens to

3

be conducted in the last election of the decade before the 2022 elections begin. It may be unfortunate for the fourteen Democratic voters to wait until then to have a remedy until 2022. However, it may be inevitable because of the federal weighing process discussed in *Purcell* and its progeny. *See Ohio State Conference of NAACP v. Husted*, 43 F. Supp. 3d 808 (S.D. Ohio 2014); *N.C. State Conference v. McCrory*, 997 F. Supp. 2d 322 (M.D. N.C. 2014); *Frank v. Walker*, 17 F. Supp. 3d 837 (E.D. Wisc. 2014); *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014). In this regard, our case is no different from that of the voters in Texas, Ohio, North Carolina and Wisconsin in the cases applying *Purcell*. *See* Richard L. Hasen, *Reining in the Purcell Principle*, 43 Fl. St. Univ. L. Rev. 2 (2016). The U.S. Supreme Court, applying *Purcell*, has not looked at the underlying merits of similar claims for injunctions delaying elections, but only at the *timing* of the remedies and the dangers to the voters in the entire jurisdiction which delay will engender. As this Court has discussed, the Federal Court lacks jurisdictional authority to weigh the issues of Republican and Democratic factions against one another. But it not only has the jurisdiction to intervene to ensure Federal electoral Due Process in Federal elections is assured to all voters; it also has a duty to do so when the state actors cannot complete redistricting in a timely manner. Here, if there is further delay, it is likely that the Congressional primary will not be held in conjunction with the Presidential Primary, the Senatorial Primary, and the primaries for numerous state offices. In any subsequent primary, turnout will predictably plummet. *Purcell* holds that this result should be prevented. What is different about this lawsuit is that Plaintiffs seek to use *Purcell* as a

stand-alone claim for affirmative relief of a Federal right which can be used prospectively, so that this jurisdiction can prevent irreparable harm, rather than leave it to an appellate court to retroactively stay irreparable last-minute meddling. Because Plaintiffs use *Purcell* prospectively in a different litigation posture does not mean the facts present here are not identical to the cases above cited applying *Purcell* nor does it mean the federal rights Plaintiffs seek to protect are distinct. The Plaintiffs rights in need of federal court protection are the same as the facts as in these cases. Plaintiffs' preliminary injunction would require the return to the *status quo ante*, before the State actors began creating delay and its attendant confusion. The 2016 plan is the plan which need not be disturbed now because of the "time" element. Time is of the essence. As the dislocations of the plaintiffs and large numbers of voters into new districts with unknown candidates in unknown territory changes voter confusion multiplies. The need for a remedy is immediate. Plaintiffs appreciate the Court's prompt and expedited handling of these issues.

### III. CONCLUSION

For the foregoing reasons, this Court should declare the rights of the parties, grant Plaintiffs' Motion for Preliminary Injunction and direct defendants to suspend implementation of any revisions to North Carolina's current congressional election districts as enacted by the General Assembly in Session Law 2016-1.

5

This 26th day of November, 2019.

/s/ Robert Neal Hunter, Jr.
Robert Neal Hunter, Jr. (NCSB 5679)
HIGGINS BENJAMIN, PLLC
301 N Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone: (336) 273-1600
Facsimile: (336) 274-4650
Email: rnhunterjr@greensborolaw.com

Conrad Boyd Sturges, III (NCSB 22342)
DAVIS, STURGES & TOMLINSON, PLLC
P.O. Drawer 708
Louisburg, NC 27549
Telephone: (919) 496-2137
Facsimile: (919) 496-6291
Email: bsturges@dstattys.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Local Rule 7.1(C) and does not exceed the 10 page limit, excluding the certificate of service page.

This 26th day of November, 2019.

> */s/ Robert Neal Hunter, Jr.*
> Robert Neal Hunter, Jr. (NCSB 5679)
> HIGGINS BENJAMIN, PLLC
> 301 N Elm Street, Suite 800
> Greensboro, North Carolina 27401
> Telephone: (336) 273-1600
> Facsimile: (336) 274-4650
> Email: rnhunterjr@greensborolaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this date, November 26th, 2019, I caused the foregoing document to be filed and served on all counsel of record by operation of CM/ECF system for the United States District Court for the Eastern District of North Carolina.

*/s/ Robert Neal Hunter, Jr.*
Robert Neal Hunter, Jr. (NCSB 5679)
HIGGINS BENJAMIN, PLLC
301 N Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone: (336) 273-1600
Facsimile: (336) 274-4650
Email: rnhunterjr@greensborolaw.com

Conrad Boyd Sturges, III (NCSB 22342)
DAVIS, STURGES & TOMLINSON, PLLC
P.O. Drawer 708
Louisburg, NC 27549
Telephone: (919) 496-2137
Facsimile: (919) 496-6291
Email: bsturges@dstattys.com

*Attorneys for Plaintiffs*